UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARTA BARBEOSCH VARELA, Individually
and as Executrix of the Estate of William P.
Barbeosch, deceased,

                               Plaintiff,      Civil Action No. 13 CV 3332 (ALC)

      - against -

BARNUM FINANCIAL GROUP, Peter Greco,
and George Gerhard III,

                               Defendant.
------------------------------------------------------------------X


## METLIFE'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF ITS MOTION TO
## DISMISS PLAINTIFF'S AMENDED COMPLAINT

                                            SEDGWICK LLP
                                            225 Liberty Street, 28th Floor
                                            New York, New York 10281-1008
                                            T:  212.422.0202  |  F:  212.422.0925
                                            *Attorneys for Defendant Metropolitan Life Insurance Company d/b/a*
                                            *Barnum Financial Group*

*Michael H. Bernstein*
*Matthew P. Mazzola*
    *Of Counsel*

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    POINT I

    ALL OF PLAINTIFF'S CAUSES OF ACTION AGAINST BARNUM ARE
    COMPLETELY PREEMPTED BY ERISA ........................................................................ 1

    POINT II

    PLAINTIFF'S STATE LAW CAUSES OF ACTION ARE WITHOUT MERIT ................ 4

        A.  Plaintiff's State Law Causes of Action are Implausible on Their Face ............................ 4

        B.  Plaintiff's State Law Causes of Action Fail to State a Claim for Which Relief May
            Be Granted ....................................................................................................................... 6

            1.  Plaintiff's First Cause of Action for Negligence Must Be Dismissed as a
                Matter of Law .......................................................................................................... 6

            2.  Plaintiff's Second Cause of Action for Negligent Misrepresentation ...................... 9

            3.  Plaintiff's Third Cause of Action for Breach of Fiduciary Duty ............................ 10

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aetna Life Ins. Co.* v. *Borges*,
  869 F.2d 142 (2d Cir. 1999) ............................................................................................................2

*Brenner v. Brenner*,
  821 F.Supp.2d 533  (E.D.N.Y. 2011) ......................................................................................... 6, 8

*Bruckmann, Rosser, Sherrill & Co., L.P. v. Marsh USA, Inc.*,
  65 A.D.3d 865 (1st Dept. 2009) ....................................................................................................10

*Cunningham v. Insurance Co. of North America*,
  521 F.Supp.2d 166  (E.D.N.Y. 2006) .............................................................................................5

*Gerosa v. Savasta & Co., Inc.*,
  329 F.3d 317 (2d Cir. 2003) ....................................................................................................... 3, 4

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*,
  449 F.3d 377 (2d Cir. 2006) ....................................................................................................... 8, 9

*Hertz Corp. v. City of New York*,
  1 F.3d 121 (2d Cir. 1994) .......................................................................................................... 7, 10

*JAO Acquisition Corp. v. Stavitsky*,
  8 N.Y.3d 144  (2007) ......................................................................................................................9

*Kvest LLC v. Cohen*,
  86 A.D.3d 481 (1st Dept. 2011) ....................................................................................................10

*Manginaro v. Welfare Fund of Local 771*, *I.A.T.S.E.*,
  21 F.Supp.2d 284 (S.D.N.Y. 1998) .................................................................................................5

*Massachusetts Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134, 146 (1985) ................................................................................................................2

*Murphy v. Kuhn*,
  90 N.Y.2d 266  (1997) ........................................................................................................... 7, 8, 9

*Pilot Life Ins. Co.* v. *Dedeaux*,
  481 U.S. 41 (1987) ..................................................................................................................... 2, 4

*Pulka v. Edelman*,
  40 N.Y.2d 781  (1976) ....................................................................................................................7

*Ronzani v. Sanofi S.A.*,
  899 F.2d 195 (2d Cir. 1990) ..................................................................................................... 7, 10

*Sawyer v Rutecki*,
  937 NYS 2d 811 (4th Dept 2012) ........................................................................................... 8

*Scharff v. Raytheon Co. Short Term Disability Plan*,
  581 F.3d 899 (9th Cir. 2009) ................................................................................................. 5

*Schultz v. Tribune ND, Inc. f/k/a Newsday, Inc.*,
  754 F.Supp.2d 556 (E.D.N.Y. 2010) ................................................................................. 2, 3

*Shah v. Helen Hayes Hosp.*,
  252 Fed.Appx. 364 (2d Cir. 2007) ....................................................................... 6, 7, 8, 9, 10

*Siti–Sites.com, Inc. v. Verizon Commc'ns, Inc.*,
  2010 WL 5392927 (S.D.N.Y. Dec. 29, 2010) ..................................................... 6, 7, 8, 9, 10

*Skrable* v. *Aetna Life Ins. Co.*,
  No. 10 Civ. 1395(AKH), 2010 WL 4053981 (S.D.N.Y. Sept. 22, 2010) ............................. 4

*Wright v. Ernst & Young LLP*,
  152 F.3d 169  (2d Cir.1998) .............................................................................................. 6, 7

**Statutes**

29 U.S.C. § 1132(a) ........................................................................................................................ 5

29 U.S.C. §§ 1132(a)(1)(B) ........................................................................................................... 2

29 U.S.C. §1144(a) ............................................................................................................... 1, 2, 5

Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA") ................. 1

ERISA § 502(a) .............................................................................................................................. 5

ERISA §§ 502(a)(1)(B) .................................................................................................................. 2

ERISA §514(a) ........................................................................................................................... 2, 5

**Rules**

Fed. R. Civ. P. Rule 12(b)(6) ........................................................................................................ 1

**PRELIMINARY STATEMENT**

Defendant, Metropolitan Life Insurance Company ("MetLife") d/b/a Barnum Financial Group ("Barnum") (collectively referred to herein as "MetLife d/b/a Barnum"), respectfully submits this Reply Memorandum of Law in further support of its motion for an order pursuant to FED. R. CIV. P. Rule 12(b)(6), dismissing with prejudice the Amended Complaint ("Complaint") of plaintiff Marta Barbeosch Varela ("Varela"), Individually and as Executrix of the Estate of William P. Barbeosch ("Decedent"), as against defendant MetLife d/b/a Barnum on the grounds that each one of the causes of action asserted is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"), and also because each cause of action fails to state a claim for which relief can be granted. In her Opposition to MetLife d/b/a Barnum's Motion to Dismiss ("Opposition"), Varela argues that her state law claims against Barnum are proper and also, not preempted by ERISA. However, plaintiff's arguments ignore controlling legal authority demonstrating the insufficiency of her pleadings, which do nothing more than recite her own conclusory statements along with additional arguments concerning allegations of fact that appear nowhere in her Complaint. Furthermore, plaintiff cannot plead around ERISA preemption by using artful language. It is clear from a review of plaintiff's Complaint that she seeks nothing more or less than the life insurance benefits that would have been payable under the Plan if the Decedent had timely converted the ERISA life insurance coverage he had under the SunTrust Employee Benefit Plan (the "Plan") to an individual policy.

Given the foregoing, and as more fully discussed below, it is respectfully requested that this Court issue an Order pursuant to FED. R. CIV. P. Rule 12(b)(6), dismissing the plaintiff's Complaint in its entirety and with prejudice as against MetLife d/b/a Barnum.

**ARGUMENT**
**POINT I**
**ALL OF PLAINTIFF'S CAUSES OF ACTION AGAINST BARNUM**
**ARE COMPLETELY PREEMPTED BY ERISA**

ERISA's federal preemption provision explicitly states, in pertinent part that : ". . . the provisions of this subchapter . . .shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . ." 29 U.S.C. §1144(a); ERISA §514(a). As the Second Circuit has observed, "[w]hat

1

triggers ERISA preemption is not just an indirect effect on the administrative procedures, but rather an effect on the primary administrative functions of benefit plans, *such as determining an employee's eligibility for a benefit and the amount of that benefit.*" *Aetna Life Ins. Co.* v. *Borges*, 869 F.2d 142, 146-47 (2d Cir. 1999) (emphasis added).[1]

Plaintiff's Complaint alleges several causes of action under New York state law, which are all completely preempted by ERISA. These causes of actions allege that but for the Decedent's reliance on MetLife d/b/a Barnum's purported misrepresentations regarding his group life insurance conversion rights under the Plan, Decedent would have timely submitted his conversion application.. It is undisputed, however, that all of Varela's causes of action against MetLife d/b/a Barnum "relate to" benefits under the Plan and specifically, Decedent's conversion rights under the Plan, and thus, are preempted by ERISA, under both complete and conflict preemption doctrines. *See* 29 U.S.C. §§ 1132(a)(1)(B); 1144(a); ERISA §§ 502(a)(1)(B); 514(a). The basis for complete ERISA preemption is evident from the fact that Varela's Complaint seeks to recover "damages" in the amount of $440,000, which is the identical amount of ERISA Plan life insurance benefits she would have been entitled to under the terms of the Plan if the Decedent had timely converted. But what plaintiff really seeks is the benefits themselves. However, Varela is not entitled to pursue causes of action outside ERISA's exclusive remedial scheme in order to enforce her right to Plan benefits and her state law claims, which purport to assert non-ERISA claims are, in reality, impermissible alternate enforcement mechanisms prohibited under ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985).

In *Schultz v. Tribune ND, Inc. f/k/a Newsday, Inc.*, 754 F.Supp.2d 556 (E.D.N.Y. 2010), the plaintiff brought a state law cause of action against his employer for discrimination alleging that he was terminated solely for the purpose of preventing him from receiving disability benefits. *See Schultz*, 754 F.Supp.2d. at 561. The district court in *Schultz* held that plaintiff's discrimination action was completely preempted because it fell within

---

[1] See Point I of Defendant's Memorandum of Law in Support of its Motion to Dismiss ("MetLife's MOL") for a detailed discussion of the law and facts relevant to MetLife's position that plaintiff's state law claims are preempted by ERISA, which are incorporated by reference herein. (*See* MetLife's MOL pp. 9-11).

2

the scope of ERISA §510 and thus, within the scope of ERISA's exclusive civil enforcement provisions under ERISA § 502(a), 29 U.S.C. § 1132(a). *See Id.* Here, plaintiff's claim for benefits is also completely redressable within the scope of ERISA § 502(a)(1)(B) and as such, the resort to state law causes of action against improper party defendants is a similar effort to avoid ERISA's preemption sweep. Varela's state law claims seeking the exact amount of benefits allegedly due under the Plan shows that she is simply trying to avoid ERISA preemption by the use of "artful pleading." (Complaint ¶ 29). However, under the "artful-pleading doctrine," which is a corollary to the well-pleaded complaint rule:

> … a plaintiff may not defeat federal subject-matter jurisdiction by artfully pleading his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law. Under such circumstances, courts look beyond the face of an artfully pled complaint to determine whether plaintiff has clothed a federal claim in state garb by pleading state law claims that actually arise under federal law.

*Schultz v. Tribune ND, Inc. f/k/a Newsday, Inc.*, 754 F.Supp.2d 556 (E.D.N.Y. 2010) (internal quotations and citations omitted).

Varela's arguments in opposition are nothing more than a semantic word game, claiming that she is seeking "damages" and not "benefits." Despite this kind of "artful pleading," it is clear that Varela is seeking Plan benefits via an impermissible alternate enforcement mechanism, which is not authorized under ERISA. *See Pilot Life Ins. Co.*, 481 U.S. at 54 ( holding that "the six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted … provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." ).

Varela also argues in her opposition that her claims are not preempted by ERISA because she did not bring this action against any plan fiduciary. ("Pl. Opp. pp. 12-13). Varela cites *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 324 (2d Cir. 2003), to support her argument that her claims are not preempted by ERISA because they do not affect the relationships among "core ERISA entities;" i.e. "beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself." *Id.* at 324. Despite Varela's argument to the contrary, however, the Second Circuit's finding in *Gerosa* simply discussed trends among several federal courts showing a "reluctance" to find that claims not affecting the relationship between "core

3

ERISA entities" are preempted by ERISA. *Id.* at 24.  This finding in *Gerosa*, however, was not intended to create a means for "artful pleading" to accomplish an end-run around ERISA preemption as Varela suggests. Indeed, Varela relies on the Second Circuit's finding in *Gerosa* to provide a legal basis for her state law causes of action against what she alleges is a non-ERISA entity (i.e. Barnum) for its alleged failure to accurately interpret, and notify the Decedent of the Plan's conversation requirements, which activities are central ERISA fiduciary functions. (Pl. Opp. pp. 12-13). Varela fails to acknowledge that Barnum is not an entity at all and is merely a MetLife "d/b/a." It is undisputed that MetLife is a Plan fiduciary, and thus a "core ERISA entity."  Varela further fails to acknowledge that in *Gerosa,* the Second Circuit held that "state laws that would tend to control or supersede central ERISA functions — such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits — have typically been found to be preempted." *Id.* at 234. It is also undisputed that the Decedent received sufficient notice of the Plan's conversion rules from the appropriate "core ERISA entities" on multiple occasions, prior to the date to convert had expired. Both the Plan and SPD set forth the Plan's conversion rules and the Decedent's employer/Plan Administrator also sent the Decedent two notifications explaining the conversion rules under the Plan prior to the date to convert had expired.[2] (35, 56, 266-67340-341) (Complaint ¶16). Despite all of this actual notice that was undeniably received by Decedent, he did not timely convert and thus, Varela's claim for life insurance benefits in excess of $10,000 was properly denied by MetLife. Varela's state law claims, if allowed would infringe upon MetLife's duty to administer claims in accordance with the clear and unambiguous terms of the Plan; thus, they are preempted by ERISA. *See* ERISA § 502(a); 29 U.S.C. § 1132(a); ERISA §514(a); 29 U.S.C. §1144(a); *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41, 54 (1987); *Skrable* v. *Aetna Life Ins. Co.*, No. 10 Civ. 1395(AKH), 2010 WL 4053981, *2 (S.D.N.Y. Sept. 22, 2010).

## POINT II
## PLAINTIFF'S STATE LAW CAUSES OF ACTION ARE WITHOUT MERIT

**A.**     <u>Plaintiff's State Law Causes of Action are Implausible on Their Face</u>

---

[2] See Statement of Facts section of MetLife's MOL for a discussion of the facts demonstrating the sufficient notice the Decedent received regarding the Plan's conversion requirements. (*See* MetLife's MOL pp. 4-7).

In addition to being preempted by ERISA, Varela's state law causes of action should be dismissed because they all fail to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. 1937 at 1949. Each of Varela's causes of action allege that MetLife d/b/a Barnum provided the Decedent with incorrect information regarding his conversion rights under the Plan, and that "[if MetLife d/b/a Barnum had] properly advised [the Decedent] of the correct policy conversion notice date, [the Decedent] would have submitted the appropriate form in a timely manner." (Complaint ¶¶ 36, 44, 51). These allegations are completely contradicted by indisputable documentary evidence and other allegations referenced in the Complaint.[3]

Both the terms of the SPD and the Plan state that Plan participants must submit the appropriate conversion form within 31 days of his/her employment status change. (35, 56). Therefore, as a matter of law, the Decedent received, at the very least, constructive notice of the terms of the Plan. *See Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.*, 21 F.Supp.2d 284, 299 (S.D.N.Y. 1998); *see also Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 908 (9th Cir. 2009). Therefore, it makes no difference that Decedent purportedly received incorrect information about the time limit within which to exercise his conversion rights since the written Plan and SPD clearly and unambiguously provide all the necessary information on this issue.

Varela cites *Cunningham v. Insurance Co. of North America*, 521 F.Supp.2d 166, 176 (E.D.N.Y. 2006) to support her argument that MetLife d/b/a Barnum is not entitled to rely on the presumption that the Decedent had constructive knowledge of the unambiguous terms of the Plan where it created a "misimpression, whether willful or not, with regard to an insured's policy." (Pl. Opp. pp. 17-18). Varela's reliance on *Cunningham* is misplaced because that case involved an insurance broker who made several misrepresentations about the extent of the particular insurance coverage that he procured for the plaintiff, which misrepresentations the plaintiff reasonably relied upon on. *Id.* By contrast, in this matter, Varela alleges that Barnum should be held liable for certain misrepresentations that it allegedly made to the Decedent regarding his conversion rights under the Plan it did not procure for the Decedent. Indeed, the Decedent, who was a participant in the Plan, admittedly had the SPD and all of the information explaining his conversion rights from Plan fiduciaries who

---

[3] See Point IV(A) of MetLife's MOL for a detailed discussion of the law and facts relevant to its position that plaintiff's state law claims are implausible on their face. (*See* MetLife's MOL pp. 16-18).

5

were all in a better position to clarify the conversion requirements under the Plan than Barnum, who Varela states is a "complete stranger to the SunTrust Plan." (Pl. Opp. 13).

Varela's self-serving contention that the Decedent would have timely converted his group coverage if only Barnum properly advised him becomes even less plausible when considering that the SunTrust HR Department sent the Decedent an email on April 8, 2011, explaining his conversion rights under the Plan. (340-341) (Complaint ¶16). In addition, in a follow-up communication on April 18, 2013, SunTrust mailed the Decedent a MetLife "Conversion of Group Life benefits to an Individual Policy" form in response to his request that similarly explained the time frame for which he was required to convert his coverage under the Plan. (266-67). Varela's opposition offers no explanation for why the Decedent ignored the clear terms of the Plan, the notification from his employer regarding coverage obtained as a result of his employment, and the form from Plan fiduciary MetLife, in favor of the alleged misrepresentation from an individuals who did not procure the coverage at issue for him and was a "complete stranger to the SunTrust Plan."

**B.     Plaintiff's State Law Causes of Action Fail to State a Claim for Which Relief May Be Granted**

Varela argues that each of her state law causes of action against MetLife d/b/a Barnum states a claim for which relief may be granted. (Pl. Opp. pp. 13-19). These arguments are unavailing because they ignore well-settled law in the State of New York and, furthermore, are based on new, conclusory allegations that are not even asserted in the Complaint. As such, these allegations are insufficient, as a matter of law, to defeat a motion to dismiss. *See Shah v. Helen Hayes Hosp.,* 252 Fed.Appx. 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.") (citing *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998)); *Siti–Sites.com, Inc. v. Verizon Commc'ns, Inc.,* 2010 WL 5392927, at *5 (S.D.N.Y. Dec. 29, 2010) *aff'd,* 428 Fed.Appx. 100 (2d Cir. 2011).

   **1.     Plaintiff's First Cause of Action for Negligence Must Be Dismissed**

Before a defendant may be held liable for negligence it must be shown that the defendant owes a legal

6

duty to the plaintiff.[4] *See Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976). The law is well-settled that insurance agents/brokers only have a common-law duty to obtain requested coverage for their clients within a reasonable time or to inform the client of their inability to do so. *See Murphy v. Kuhn*, 90 N.Y.2d 266, *270 (1997). Varela argues that MetLife d/b/a Barnum "too narrowly portrays itself as just 'insurance agents/brokers' in this case" because it was foremost a financial and insurance advisor. (Pl. Opp. p. 14). This is a distinction without a difference for purposes of Varela's cause of action. While Varela labels MetLife d/b/a Barnum a "financial advisor" and references its internet website to support her argument that MetLife d/b/a Barnum should be held to the standard of a financial advisor because it generally provides financial services, the allegations in her Amended Complaint do not support this contention, nor do they allege that Decedent was seeking "financial advice" as opposed to pricing life insurance to possibly replace the group coverage he was about to lose. (*Id.*). Indeed, Varela alleges that "Decedent contacted Barnum regarding purchasing a private insurance policy to replace the excess of the $10,000.00 basic life insurance." (Complaint ¶ 20). Thus, plaintiff admits in the Complaint that the Decedent utilized MetLife d/b/a Barnum's services as an insurance agent/broker in considering whether to convert his coverage under the Plan to an individual policy, not as a financial advisor. (*Id.*). Varela's new allegations to the contrary, which are submitted for the first time in opposition to MetLife d/b/a Barnum's motion, are insufficient as a matter of law to defeat a motion to dismiss. *See Shah*, 252 Fed.Appx. at 366 (citing *Wright*, 152 F.3d at 178); *Siti–Sites.com, Inc.*, 2010 WL 5392927 at *5 *aff'd*, 428 Fed.Appx. 100. Furthermore, Varela may not now bolster the allegations in her Complaint with the excerpt from Barnum's website, which was not referenced in, or attached to, the Complaint and thus, cannot be considered by this Court in reviewing MetLife d/b/a Barnum's motion to dismiss. *See Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1994); *see also Ronzani v. Sanofi S.A.*, 899 F.2d 195, 196 (2d Cir. 1990). Therefore, Varela's arguments that MetLife d/b/a Barnum owed the Decedent the duties owed by a financial advisor[5] are without

---

[4] See Point IV(B)(1) of MetLife's MOL for a detailed discussion of the law and facts relevant to its position that plaintiff's cause of action for negligence must be dismissed as a matter of law. (*See* MetLife's MOL pp. 18-20).
[5] Varela also argues that Barnum acted as an "insurance advisor" in this case. (Pl. Opp. pp. 13-14). This profession appears to have been created by Varela's counsel who fails to cite any case law demonstrating a distinction between an insurance agent/broker and an "insurance advisor." (*Id.*).

7

merit considering that her Complaint is devoid of any allegations that the Decedent, who was an investment banker and lawyer,[6] actually sought such service from MetLife d/b/a Barnum.

Although Varela conclusorily argues that an insurance agent/broker may be found liable under a theory of negligence for providing bad advice, it is well-settled that it is only in "exceptional and particularized situations," when there is a "special relationship" between an insurance broker and its customer, that a special level of advisory responsibility might exist.[7] *See Murphy*, 90 N.Y.2d at 270-72. Under New York law, a "special relationship may arise where (1) the agent receives compensation for consultation apart from payment of the premiums, (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent, or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on." *Murphy*, 90 N.Y.2d at 272; *Sawyer v Rutecki,* 937 NYS 2d 811, *813 (4th Dept 2012). Varela now, for the first time in opposition to MetLife d/b/a Barnum's motion to dismiss, alleges that the Decedent consulted with Barnum "precisely because of Barnum's superior knowledge regarding insurance matters." (Pl. Opp. p. 16). This new allegation is not supported by any allegation in plaintiff's Complaint and again, Varela may not use her opposition to the motion to dismiss as a means to amend her complaint. *See Shah,* 252 Fed.Appx. at 366; *Siti–Sites.com, Inc.,* 2010 WL 5392927 at *5 *aff'd,* 428 Fed.Appx. 100; *Brenner,* 821 F.Supp.2d at 538 -539. Furthermore, Varela does not allege that MetLife d/b/a Barnum and the Decedent ever discussed the duration of his group coverage under the Plan; in fact, Varela alleges that they discussed the conversion period, but notably does not allege that they discussed the date Decedent's group coverage expired under the Plan.[8]

Varela also relies on *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 388 (2d Cir. 2006) for the proposition that an "insurance broker may be liable under a theory of negligence for failing to

---

[6] *See Decedent's Memorial,* <http://www.chasealum.org/article.html?aid=665> as it appeared on January 6, 2014.
[7] See Point IV(B)(1) of MetLife's MOL for a detailed discussion of the law and facts relevant to its position that plaintiff did not properly allege the existence of a "special relationship" with Barnum. (*See* MetLife's MOL pp. 19-20).
[8] Pursuant to the terms of the Plan, even though the conversion period could be extended for late notice, group coverage under the Plan could not be extended beyond 31 days after the life insurance ends. (34).

8

inform an insured client about the cancelation of an insurance policy when the insurer knew about the cancellation *and the insured did not*." (Pl. Opp. p 14)(emphasis added). Varela's reliance on *GlobalNet* is misplaced because here, the documentary evidence and allegations in the Complaint prove unequivocally that the Decedent knew or should have known that his group coverage under the Plan was going to change on the date his employment status changed. (35, 56, 266-67340-341) (Complaint ¶16). Therefore, Varela cannot argue that the Decedent was unaware of this change in coverage or of the Plans' conversion requirements.

### 2.     Plaintiff's Second Cause of Action for Negligent Misrepresentation

In order to prevail on a claim for negligent misrepresentation under New York state law, a plaintiff must establish the following: (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."[9] *See JAO Acquisition Corp. v. Stavitsky,* 8 N.Y.3d 144, 148 (2007). As discussed in Point II (B)(1), *supra*, in exceptional circumstances a cause of action for negligent misrepresentation exists where there is a special relationship between the customer and the insurance broker and the customer reasonably relies upon the broker's representations. *See Murphy v. Kuhn, supra.* Here, Varela has failed to sufficiently allege facts demonstrating that a special relationship existed between the Decedent and Barnum.

Varela argues that she did allege sufficient facts establishing the Decedent's reasonable reliance upon Barnum's allegedly bad advice. (Pl. Opp. p. 17). Specifically, Varela argues that "it is precisely because William did not understand how to convert his policy that he consulted with Barnum in the first place." (*Id.*). However, the Complaint does not allege that the Decedent did not understand how to convert his policy and Varela is not permitted to amend her Complaint in opposition to MetLife d/b/a Barnum's motion to dismiss to add such allegations. *See Shah, supra.*; *Siti–Sites.com, Inc., supra.*

Varela also argues that the Decedent reasonably relied on Barnum's purported misrepresentations because this is exactly the type of advice Barnum seeks to give people. (Pl. Opp. p. 17). This argument is meritless for several reasons. First, Varela improperly advances this allegation for the first time in opposition to

---

[9] See Point IV(B)(2) of MetLife's MOL for a detailed discussion of the law and facts relevant to its position that plaintiff's claim for negligent misrepresentation must be dismissed. (*See* MetLife's MOL pp. 20).

9

MetLife d/b/a Barnum's motion, which again, is improper as a matter of law. *See Shah, supra*; *Siti–Sites.com, Inc., supra.*. Second, Varela improperly cites to an excerpt from Barnum's website, which again was not referenced in, or attached to, the Complaint and thus, cannot be considered by this court in reviewing MetLife d/b/a Barnum's motion to dismiss. *See Hertz Corp, supra*; *see also Ronzani, supra*. Moreover, the documentary evidence referenced in plaintiff's Complaint cannot support Varela's new and improper allegation that the Decedent reasonably relied on Barnum's alleged misrepresentation. Indeed, the documentary evidence incorporated by reference into Varela's Complaint demonstrates that the Decedent was informed of his proper conversion rights by the Plan, the SPD, and the notifications he received from his employer, the Plan administrator, but seemingly ignored this information. Varela's Complaint alleges that despite this notice, Decedent chose to rely on the alleged misrepresentations of an insurance agent/broker with whom he had no prior relationship, who was not a Plan fiduciary, and who Varela labeled as a "complete stranger to the [Plan]." *See* Point II(A), *supra*. These implausible allegations are insufficient on their face to support this cause of action as a matter of law.

### 3. Plaintiff's Third Cause of Action for Breach of Fiduciary Duty

Absent a special relationship between an insured and his insurance broker, a claim for breach of fiduciary duty does not lie. *See Bruckmann, Rosser, Sherrill & Co., L.P. v. Marsh USA, Inc.*, 65 A.D.3d 865, 867 (1st Dept. 2009). As discussed in Point II (B)(1), *supra*, Varela has failed to allege sufficient facts to demonstrate that a special relationship existed between the Decedent and MetLife d/b/a Barnum.[10] Furthermore, Varela did not respond in her opposition to MetLife's d/b/a Barnum's argument that a fiduciary duty does not exist where the facts alleged establish only that the parties had nothing more than a typical insurance broker-customer relationship, as MetLife d/b/a Barnum had with the Decedent in this case. *See Kvest LLC v. Cohen,* 86 A.D.3d 481, 483 (1st Dept. 2011). Therefore, the Court should dismiss the plaintiffs' breach of fiduciary duty cause of action against MetLife d/b/a Barnum.

### CONCLUSION

For the foregoing reasons, this Court should grant MetLife d/b/a Barnum's motion to dismiss the plaintiff's Complaint in its entirety because it fails to state a claim upon which relief can be granted.

---

[10] See Point IV(B)(3) of MetLife's MOL for a detailed discussion of the law and facts relevant to its position that plaintiff's claim for breach of fiduciary duty must be dismissed. (*See* MetLife's MOL pp. 20-21).

10

Dated: New York, New York
January 17, 2014

Respectfully Submitted,

s/_____
Michael H. Bernstein
Matthew P. Mazzola
SEDGWICK LLP
225 Liberty Street, 28th Floor
New York, NY 10281-1008
Tel. (212) 422-0202
Fax (212) 422-0925
*Attorneys for Defendant Metropolitan Life Insurance Company d/b/a Barnum Financial Group*

11

## CERTIFICATE OF SERVICE

I, Matthew P. Mazzola, hereby certify and affirm that a true and correct copy of the attached **REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION to Dismiss Plaintiff's Amended Complaint** was served via ECF and Regular Mail on this 17th day of January, 2014, upon the following:

Thomas More Marrone, Esq.
GREENBLATT PIERCE ENGLE FUNT & FLORES, LLC
123 South Broad Street, 25th Floor
Philadelphia, Pennsylvania 19109
t. 215.735.1600
f. 215.735.1660
*Attorneys for Plaintiff*

Christopher Pisacane, Esq.
SICHENZIA ROSS FRIEDMAN FERENCE LLP
61 Broadway, 32nd Floor
New York, New York 10006
t. 212-930-9700
direct 646-810-0596
f. 212-930-9725
*Attorneys for Co-Defendants*
*Peter Greco and George Gerhard III*

s/_____
Matthew P. Mazzola (MM-7427)

Dated:   New York, New York
         January 17, 2014

1