UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Marta Barbeosch Varela, | : |
| *Plaintiff* | : 13 Civ. 3332 (ALC) |
| v. | : |
| Barnum Financial Group, et al., | : JURY TRIAL DEMANDED |
| *Defendants* | : |

## SECOND AMENDED CIVIL ACTION COMPLAINT

### I.
### NATURE OF ACTION

1.  This is an action under New York common law only for negligence, negligent misrepresentation, and breach of fiduciary duty brought by Marta Barbeosch Varela ("Marta") the Executrix and beneficiary of the estate of her late husband William P. Barbeosch ("William") against an insurance broker who failed to properly advise William of the correct deadline to convert a group life insurance policy to an individual policy following William's change in employment status.

2.  As a result of the defendants' negligent advice and breach of common law fiduciary duties, William failed to timely convert a group life insurance policy, resulting in a loss of $440,000.00 in death benefits to Marta. Plaintiff seeks damages from the Defendants under state common law theories of liability. Plaintiff does not assert any claims under ERISA and does not seek to recover benefits under any ERISA Plan or Policy.

## II.
## PARTIES

3. Plaintiff Marta Barbeosch Varela resides in New York, New York, and is the Executrix of the Estate of William P. Barbeosch, deceased. She is a citizen of the State of New York.

4. Defendant Barnum Financial Group ("BFG") is an insurance and financial planning firm with its headquarters and principle place of business at 6 Corporate Drive, Shelton, Connecticut 06484. It is a citizen of the State of Connecticut.

5. Defendant Peter Greco is an adult individual who resides at 217 Mirey Dam Road, Middlebury, Connecticut 06762, and is a citizen of the State of Connecticut. At all relevant times, Defendant Greco was a financial services representative with BFG.

6. At all relevant times, Defendant Greco acted as the agent, servant, employee, and/or representative of Defendant BFG, within the scope of his agency, service, employment, and/or representative capacity.

## III.
## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims presented in this action pursuant to 28 U.S.C. §1332 (Diversity).

8. Venue is appropriate under 28 U.S.C. §1391(b)(2) because this is a judicial district in which a substantial part of the events or omissions given rise to plaintiff's claims occurred.

## IV.
## FACTS

### *Mr. Barbeosch's Medical Condition, Change of Employment Status, and His Life Insurance*

9.  Until April 1, 2011, William was Chief Fiduciary Officer of GenSpring Family Offices ("GenSpring"), a wholly-owned subsidiary of SunTrust Banks, Inc., and Chairman of the Board of Teton Trust Company of Jackson, Wyoming, also a wholly-owned subsidiary of SunTrust Banks, Inc.

10. As a full-time employee of GenSpring, William was entitled to a group life insurance benefit with coverage of one and one-half times his annual base pay.

11. This plan resulted in a basic life insurance benefit to his beneficiary of $450,000.00 based upon his salary of $300,000.00.

12. At all relevant times, Marta was the beneficiary of William's basic life insurance benefit under the SunTrust plan.

13. According to the SunTrust plan documents the "NAME AND ADDRESS OF EMPLOYER AND PLAN ADMINISTRATOR" is "SunTrust Bank Inc." which is located in "Atlanta, GA." (Plan documents appended to BFG's Declaration of Marie O'Dell, as Exhibit A, at 000044. Ms. O'Dell's Declaration with Exhibits is attached to this Complaint as Exhibit A).

14. Coincidently, Metropolitan Life Insurance Company underwrote the coverage under the plan. (*Id.*) Barnum judicially admits, however, that the "Plan Administrator" was "SunTrust." (Barnum Memorandum, [assigned S.D.N.Y. docket document number 24] at 17). Barnum also judicially admits that "Barnum and its agents/employees were not and are not Plan fiduciaries[.]" (*Id.* at 18).

15. Defendants were not the SunTrust Plan Administrators and were not SunTrust Plan fiduciaries.

16. On or about March, 2010 William was diagnosed with adenoid cystic cancer, which meant that he had, on average, just five to seven years to live. Both William and Marta knew this.

17. On or about February 23, 2011, GenSpring advised William that the Fiduciary Services department at GenSpring was being eliminated.

18. Despite the elimination of his department, GenSpring offered William a part-time position as Family Wealth Advisor and Senior Advisor at GenSpring with an effective date of April 1, 2011.

19. Pursuant to the terms of the SunTrust basic life insurance plan, regular part-time employees were entitled to only a flat $10,000.00 of coverage for basic life insurance.

20. On or about April 8, 2011, William received an email from SunTrust HR summarizing how his employment status change would affect his benefits under the SunTrust Health & Welfare Plan. William's basic life insurance benefit of $450,000.00 would be reduced to $10,000.00, and if he wished to convert the excess of $10,000.00 to a private policy he needed to call a specific telephone number within 31 days

### *Defendants' Failure to Properly Advise Mr. Barbeosch*

21. On April 18, 2011, William consulted with Peter Greco of BFG regarding converting the excess of the $10,000.00 basic life insurance benefit to a private policy with benefits of $450,000.00 to be paid to Marta in the event of William's death. At least as early as this day, Greco and BFG agreed to, undertook to, and did advise William, and assumed and owed him and Marta legal duties.

22. On or about April 18, 2011, Greco advised William that the period for converting his policy from the basic $10,000.00 benefit ran from April 18, 2011 (rather than April 1, 2011, the date of the change in William's employment status), and that the deadline for converting the

4

policy was May 19, 2011. William advised his wife, Marta, of Greco's advice regarding the conversion deadline.

23. Greco did not warn or advise William that he was actually required to complete and submit a conversion notice within 31 days of his April 1, 2011 employment status change with SunTrust, which was May 2, 2011, nor did anyone else from BFG.

24. On April 27, 2011, William and Greco had a telephone conversation regarding purchasing a private insurance policy to replace the excess of the $10,000.00 basic life insurance policy from SunTrust; that is, converting his policy. William told Marta about this conversation.

25. On April 27, 2011, Greco sent an email to William regarding the rate of return on a replacement policy under consideration. William told Marta about this email.

26. William told Marta that because he had cancer he intended to exercise his right to timely convert his policy to a $450,000.00 private policy by the May 19, 2011 deadline.

27. William died on May 13, 2011, 42 days after his change in employment status, but only 25 days after Greco told him he had 31 days to exercise his conversion rights. That is, William died six days before May 19, 2011, which is the day Greco advised him was the conversion deadline.

28. Marta telephoned BFG on Thursday, May 27, 2011 to discuss making a claim for William's life insurance benefits, and Greco and his colleague at BFG, George Gerhard, together spoke with her.

29. At all prior times Greco and BFG in fact believed, incorrectly, that the 31 day conversion period ran from April 18, 2011, and that the deadline was May 19, 2011.

30. During this May 27 telephone discussion, Gerhard advised Marta that William died within the policy conversion period (that is, before May 19, 2011) and that she was therefore entitled to the $450,000.00 benefit. Greco was present for and participated in this

conversation, and did not dispute or correct Gerhard's representation of the conversion period. Gerhard's statement demonstrated his, Greco's, and BFG's prior and then-present understanding that May 19, 2011 was the conversion deadline, and, by reasonable inference, that they previously advised William that May 19, 2011 was the conversion deadline.

31. The next day, Friday, May 28, 2011, Gerhard contacted Marta and advised her that he had confirmed with the conversion department that May 19, 2011 was the conversion deadline. He told Marta that she was entitled to the full $450,000.00 benefit because William had died within the conversion period, that is, before the May 19, 2011 deadline.

32. On June 14, 2011, an insurance company claims representative informed Marta that Gerhard had "misinformed" her regarding her entitlement to the life insurance proceeds, and that Marta was only entitled to a basic life insurance benefit of $10,000.00 because William had not submitted a notice of conversion within the 31 day period following his April 1, 2011 change in employment status.

33. Marta twice appealed this denial of the excess life insurance benefit and both appeals were denied.

## COUNT ONE

### Negligence

34. Plaintiff incorporates here by reference all allegations of this Complaint.

35. At all relevant times, Marta Barbeosch Varela was the intended beneficiary of the life insurance policy to be purchased by William P. Barbeosch, and defendants knew that they were assisting William with purchasing insurance for the benefit of another, namely Marta.

36. Defendants assumed and owed duties of reasonable care to Marta and William.

6

37.     Defendants undertook to and did enter into a special relationship of trust and confidence with William and undertook a duty to properly advise him of the correct policy conversion notice date.

38.     Defendants knew or should have known that William was required to submit a notice of conversion to MetLife within 31 days of his April 1, 2011 change in employment status to preserve his beneficiary's right to the $450,000.00 life insurance benefit, but they did not advise William of this.

39.     Had Defendants properly advised William of the correct policy conversion notice date, William would have timely submitted the appropriate form.

40.     Defendants breached the duties they assumed and owed to Marta and William by failing to conduct themselves in conformity with the standards of care applicable to their respective industries, financial planning and advising, brokerage, and insurance.

41.     Defendants' breaches of the duties they assumed and owed to Marta and William proximately resulted in plaintiff's damages, including loss of an additional $440,000.00 in life insurance benefits.

42.     Accordingly, defendants are liable to plaintiff for $440,000.00 in compensatory damages, plus costs and interest

## COUNT TWO

### Negligent Misrepresentation

43.     Plaintiff incorporates here by reference all allegations of this Complaint.

44.     At all relevant times, Marta Barbeosch Varela was the intended beneficiary of the life insurance policy to be purchased by William P. Barbeosch, and Defendants knew that they were assisting William with purchasing insurance for the benefit of another, namely Marta.

45. Defendants BFG and Greco breached the duties they assumed and owed to Marta and William by misrepresenting the proper conversion date applicable to William.

46. Defendants breached the duties they assumed and owed to Marta and William by failing to conduct themselves in conformity with the standards of care applicable to their respective industries, financial planning and advising, brokerage, and insurance.

47. Had Defendants properly advised William of the correct policy conversion notice date, William would have submitted the appropriate form in a timely manner.

48. Defendants' breaches of the duties they assumed and owed to Marta and William proximately resulted in plaintiff's damages, including loss of an additional $440,000.00 in life insurance benefits.

49. Accordingly, Defendants are liable to plaintiff for $440,000.00 in compensatory damages, plus costs and interest.

## COUNT THREE

### Common Law Breach of Fiduciary Duty

50. Plaintiff incorporates here by reference all allegations of this Complaint.

51. At all relevant times, Marta Barbeosch Varela was the intended beneficiary of the life insurance policy to be purchased by William P. Barbeosch, and defendants knew that they were assisting William with purchasing insurance for the benefit of another, namely Marta.

52. Defendants BFG and Greco assumed and owed fiduciary duties to Marta and William to properly advise him of the correct policy conversion notice date.

53. Defendants breached the duties they assumed and owed to Marta and William by failing to conduct themselves in conformity with the standards of care applicable to their respective industries, financial planning and advising, brokerage, and insurance.

54. Had defendants properly advised William of the correct policy conversion notice date, William would have submitted the appropriate form in a timely manner.

55. Defendants' breaches of the duties they assumed and owed to Marta and William proximately resulted in plaintiff's damages, including loss of an additional $440,000.00 in life insurance benefits.

56. Accordingly, defendants are liable to plaintiff for $440,000.00 in compensatory damages, plus costs and interest.

## DEMAND FOR RELIEF

WHEREFORE, plaintiff demands judgment against Defendants on all causes of action for $440,000.00 in compensatory damages, plus costs, interest, and such other relief as the Court deems just and proper. Plaintiff demands trial by jury.

GREENBLATT PIERCE ENGLE
FUNT & FLORES, LLC

_____ 10 Sept. 2014
Thomas More Marrone
NY ID No. 4739538
123 South Broad Street, Suite 2500
Philadelphia, Pennsylvania 19109
Email: t.marrone@gpeff.com
tel. 215-735-1600  fax 215-735-1660
*Attorney for Plaintiff*