UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
Marta Barbeosch Varela, et al.          :
                                        :   13 Civ. 3332 (ALC)
                        Plaintiff,      :
                                        :
        -against-                       :
                                        :
Barnum Financial Group, et al.,         :
                                        :
                        Defendants.     :
---------------------------------------------------------------X

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT PETER GRECO'S MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

GREENBLATT PIERCE ENGLE
FUNT & FLORES, LLC
Thomas More Marrone
N.Y. ID No. 4739538
123 South Broad Street, 25th Floor
Philadelphia, Pennsylvania 19109
tmarrone@gpeff.com
t. 215.735.1600  f. 215.735.1660
*Attorney for Plaintiff*

## Table of Contents

I. INTRODUCTION ................................................................................................5

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ..........................5

III. THE STANDARD OF REVIEW UNDER RULE 12(b)(6)...............................9

IV. ARGUMENT ....................................................................................................10

    A. Plaintiff's Claims For Damages (Not Benefits) Under New York Common Law (not ERISA) Against Third Party Strangers to Her Late Husband's ERISA Plan (Not Plan Administrators, Employers, or Fiduciaries) Are Not Preempted by ERISA ..............................................................................................10

    B. Plaintiff Has Stated Claims Under the Common Law of Negligence, Negligent Misrepresentation, and Breach of Fiduciary Duty ..............................13

        a. Plaintiff's negligence and negligent misrepresentation claims......14

        b. Plaintiff's common law breach of fiduciary duty claim ...............18

V. CONCLUSION .................................................................................................19

# **Table of Authorities**

*Cases*

*American Tissue, Inc. v. Donaldson, LuFkin & Jenrette Securities Corp.*, 351 F. Supp. 2d 79 (S.D. N.Y. 2004) ................................................................................................................ 19

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d. 868 (2009) ................................ 9

*Assured Guar. (UK) Ltd. v. J. P. Morgan Inv. Mgmt., Inc.*, 80 A.D. 3d 293, 915 N.Y.S. 2d 7 (1st Dep't 2010) ...................................................................................................................... 15

Baseball Office of the Commissioner v. Marsh & McLennan, Inc., 295 A.D.2d 73, 742 N.Y.S. 2d 40 (2002) .......................................................................................................................... 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................. 9

*Bullmore v. Ernst & Young Cayman Is.*, 45 A. D. 3d 461, 846 N.Y.S. 2d 145 (1st Dep't 2007) . 15

*California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.* 519 U.S. 316 (1997) ................................................................................................................................... 11

*Cherniak v. Solow Realty and Development Compnay, LLC.*, 2013 WL 3757082 (S.D.N.Y. July 17, 2013) .......................................................................................................................... 12, 13

*Cunningham v. Insurance Company of North America*, 521 F. Supp.2d 166 (E.D.N.Y. 2007).. 17, 18

*Curanovic v. New York Central Mutual Fire Insurance Company*, 307 A.D.2d 435, 762 N.Y.S. 2d 148 (2003) ........................................................................................................................ 17

*DeBuono v. NYSA-ILA Medical and Clinical Services Fund*, 520 U.S. 806 (1997) ..................... 11

*Enterprise Music Inc. v. Slep-Tone Entertainment Corp,.* 2013 WL 5345969 (S.D.N.Y. September 23, 2013) ............................................................................................................. 10

*Fernandez v. Chertoff*, 471 F.3d 45 (2d Cir. 2006) .................................................................... 10

*Gerosa v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003) ......................................................... 12, 13

*Glick Truck Sales Inc., v. Spadaccia-Ryan-Haas, Inc.*, 290 A.D.2d 780 (3d Dep't 2002) ........... 15

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.* 449 F.3d 377 (2d Cir. 2006) .. 14, 15

*Kamen Soap Prods Co., Inc. v. Brusansky & Brusansky, Inc.* 5 A.D.2d 620, 173 N.Y.S. 2d 706 (N.Y.App. Div. 1958).................................................................................................................. 15

*Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229 (2d Cir. 2007)............................................. 9

*Kimmell v. Schaefer*, 89 N.Y. 2d 257, 652 N.Y.S. 2d 257, 715 N.E. 2d 450 (1996) .................... 16

*Murphy v. Kuhn,* 90 N.Y. 2d 266, 660 N.Y.S. 2d 371, 682 N.E.2d 972 (1997)............................ 17

*New York's State Conference of Blue Cross & Blue Shield Plan v. Travelers Ins. Co.*, 514 U.S. 645 (1995) ................................................................................................................................... 11

*Ordonez v. Lovelace Inc.* 2007 WL 496445 (E.D.N.Y. February 12, 2007)................................. 15

*Pilot Life Ins .Co. v. Dedeaux*, 481 U.S. 41 (1987) ..................................................................... 10

*Ruotolo v. City of N.Y.*, 514 F.3d.184 (2d Cir. 2008) .................................................................... 9

*Severstal Wheeling Inc. v. WPN Corporation*, 809 F. Supp. 2d 245 (S.D.N.Y. 2011) ................. 15

*Shall v. Delta Airlines Inc.*, 463 U.S. 85 (1983) .......................................................................... 10

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) ................................................. 10

*Stevenson v. The Bank of New York Company, Inc.*, 609 F.3d. 56 (2d Cir. 2010) .................. 12, 13

*Weiner v. Lazard Freres & Co.*, 241 A. D. 2d 114, 72. N.Y.S. 2d 8 (1st Dep't 1998) ................. 19

*Weinrauch v. New York Life Insurance Co.*, 2013 WL 165018 (S.D.N.Y. January 16, 2013) ...... 7

# I.
# INTRODUCTION

This is an action for negligence, negligent misrepresentation, and breach of fiduciary duty brought by Marta Barbeosch Varela ("Marta") the Executrix and beneficiary of the estate of her late husband William P. Barbeosch ("William") against financial and insurance advisors who failed to properly advise William of the correct deadline to convert a group life insurance policy to an individual policy following William's change in employment status. As a result of the Defendants' negligent advice and breach of fiduciary duty, William failed to timely convert a group life insurance policy, resulting in a loss of $440,000.00 in death benefits to Marta.

# II.
# STATEMENT OF FACTS AND PROCEDURAL HISTORY

In her Second Amended Complaint, Plaintiff pleaded the following facts and reasonable inferences:

### *The Parties*

The Plaintiff is Marta Barbeosch Varela, the Executrix of the Estate of her late husband William P. Barbeosch. (Second Amended complaint, attached as exhibit A, at ¶ 3).

Defendant Barnum Financial Group ("BFG" or "Barnum") is an insurance and financial planning firm. Defendant Peter Greco ("Greco") was a financial services representative with BFG acting on behalf of BFG. (*Id.* at ¶¶ 4-6).

### *William's Life Insurance Plan, His Medical Condition, and His Change of Employment Status*

Until April 1, 2011, William was Chief Fiduciary Officer of GenSpring Family Offices ("GenSpring"), a wholly-owned subsidiary of SunTrust Banks, Inc., and Chairman of the Board of Teton Trust Company of Jackson, Wyoming, also a wholly-owned subsidiary of SunTrust Banks, Inc. (*Id.* at ¶ 9). As a full-time employee of GenSpring, William was entitled to a group

5

life insurance benefit with coverage of one and one-half times his annual base pay. (*Id.* at ¶ 10). This plan resulted in a basic life insurance benefit to his beneficiary of $450,000.00 based upon his salary of $300,000.00. (*Id.* at ¶ 11). At all relevant times Marta was the beneficiary of William's basic life insurance benefit under the SunTrust plan. (*Id.* at ¶ 12).

According to the SunTrust Plan documents the "**NAME AND ADDRESS OF EMPLOYER AND PLAN ADMINISTRATOR**" is "SunTrust Bank Inc." which is located in "Atlanta, GA." (*Id.* at ¶ 13). Coincidently, Metropolitan Life Insurance Company underwrote the coverage under the plan. (*Id.* at ¶ 14). Barnum admits, however, that the "Plan Administer" was "SunTrust" and that "Barnum and its agents/employees were not and are not plan fiduciaries[.]" (*Id.* at ¶ 14). Thus, Defendants were not SunTrust Plan Administrators and were not SunTrust Plan Fiduciaries (*Id.* at ¶ 15).

Around March, 2010 William was diagnosed with adenoid cystic cancer, which meant that he had, on average, just five to seven years to live. Both William and Marta knew this. (*Id.* at ¶ 16).

On or about February 23, 2011, GenSpring advised William that the Fiduciary Services department at GenSpring was being eliminated. Despite the elimination of his department, GenSpring offered William a part-time position as Family Wealth Advisor and Senior Advisor at GenSpring with an effective date of April 1, 2011. (*Id.* at ¶¶ 17-18).

Pursuant to the terms of the SunTrust basic life insurance plan, regular part-time employees were entitled to only a flat $10,000.00 of coverage for basic life insurance. On or about April 8, 2011, William received an email from SunTrust HR summarizing how his employment status change would affect his benefits under the SunTrust Health & Welfare Plan. William's basic life insurance benefit of $450,000.00 would be reduced to $10,000.00, and if he

wished to convert the excess of $10,000.00 to a private policy he needed to call a specific telephone number within 31 days. (*Id.* at ¶¶ 19-20). [1]

### *Defendants' Failure to Properly Advise Mr. Barbeosch*

On April 18, 2011, William consulted with Peter Greco of BFG regarding converting the excess of the $10,000.00 basic life insurance benefit to a private policy with benefits of $450,000.00 to be paid to Marta in the event of William's death. At least as early as this day, Greco and BFG agreed to, undertook to, and did advise William, and assumed and owed him and Marta legal duties. (*Id.* at ¶ 21). On this day, Greco advised William that the period for converting his policy from the basic $10,000.00 benefit ran from April 18, 2011 (rather than April 1, 2011, the date of the change in William's employment status), and that the deadline for converting the policy was May 19, 2011. William advised his wife, Marta, of Greco's advice regarding the conversion deadline. (*Id.* at ¶ 22). Greco did not warn or advise William that he was actually required to complete and submit a conversion notice within 31 days of his April 1, 2011 employment status change with SunTrust, which was May 2, 2011, nor did anyone else from BFG. (*Id.* at ¶ 23).

On April 27, 2011, William and Greco had a telephone conversation regarding purchasing a private insurance policy to replace the excess of the $10,000.00 basic life insurance policy from SunTrust; that is, converting his policy. William told Marta about this conversation. (*Id.* at ¶ 24). That same day, Greco sent an email to William regarding the rate of return on a

---

[1] "A conversion policy… is a private, non-employer-financed insurance policy that a former employee obtains through the exercise of conversion rights in a prior group policy." *Weinrauch v. New York Life Insurance Co.*, 2013 WL 165018, at *6 (S.D.N.Y. January 16, 2013) (citations omitted), *Report and recommendation adopted in full*, 2013 WL 1100809 (S.D.N.Y. March 18, 2013)It is, instead, a "new separate policy…directly between the insurer and insured." *Id.* "A converted policy is wholy separate from any previous ERISA plan and… the employer has no role in administering the conversion plan." *Id.* (citations omitted). It is not governed by ERISA. *Id.*

replacement policy under consideration. William told Marta about this email. (*Id.* at ¶25). William told Marta that because he had cancer he intended to exercise his right to timely convert his policy to a $450,000.00 private policy by the May 19, 2011 deadline. (*Id.* at ¶ 26).

William died suddenly on May 13, 2011, 42 days after his change in employment status, but only 25 days after Greco told him he had 31 days to exercise his conversion rights. That is, William died six days before May 19, 2011, which is the day Greco advised him was the conversion deadline. (*Id.* at ¶ 27).

Marta telephoned BFG on Thursday, May 27, 2011 to discuss making a claim for William's life insurance benefits, and Greco and his BFG colleague George Gerhard together spoke with her. At all prior times, Gerhard, Greco, and BFG in fact believed, incorrectly, that the 31 day conversion period ran from April 18, 2011, and that the deadline was May 19, 2011. (*Id.* at ¶ ¶ 28-29). Thus, during this May 27 telephone discussion Gerhard advised Marta that William died within the policy conversion period (that is, before May 19, 2011) and that she was therefore entitled to the $450,000.00 benefit. Greco was present for and participated in this conversation, and did not dispute or correct Gerhard's representation of the conversion period. Gerhard's statement demonstrated his, Greco's, and BFG's prior and then-present understanding that May 19, 2011 was the conversion deadline, and, by reasonable inference, that they previously advised William that May 19, 2011 was the conversion deadline. (*Id.* at ¶ ¶ 30).

The next day, Friday, May 28, 2011, Gerhard called Marta and advised her that he had confirmed with the conversion department that May 19, 2011 was the conversion deadline. He told Marta that she was entitled to the full $450,000.00 benefit because William had died within the conversion period, that is, before the May 19, 2011 deadline. (*Id.* at ¶ 31).

On June 14, 2011, an insurance company claims representative informed Marta that Gerhard had "misinformed" her regarding her entitlement to the life insurance proceeds, and that Marta was only entitled to a basic life insurance benefit of $10,000.00 because William had not submitted a notice of conversion within the 31 day period following his April 1, 2011 change in employment status. (*Id.* at ¶ 32). Marta twice appealed this denial of the excess life insurance benefit and both appeals were denied. (*Id.* at ¶ 33).

Based upon these facts and inferences, Plaintiff seeks damages from the Defendants under common law theories of negligence, negligence misrepresentation, and breach of fiduciary duty (*Id.* at ¶ ¶ 34-56). Plaintiff does not seek to recover life insurance benefits in this lawsuit, and does not seek to recover against SunTrust Plan assets. Instead, Plaintiff seeks money damages from the Defendants' assets and liability insurance under state common law based upon the errors and omissions of the Defendants, who were legal strangers to her late husband's insurance plan.

## III.
## THE STANDARD OF REVIEW UNDER RULE 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that if plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d. 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, the court will accept the plaintiff's allegations as true and must "draw all reasonable inferences in favor of the plaintiff," *Ruotolo v. City of N.Y.*, 514 F.3d.184, 188 (2d Cir. 2008). However the court need not accept allegations that are merely conclusions of law. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) (complaint inadequate if it

9

> "merely offers labels and conclusions or a formulaic respiration of the elements of a cause of action"). *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). Therefore, on a motion to dismiss, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006) (internal citation marks and citation omitted).

*Enterprise Music Inc. v. Slep-Tone Entertainment Corp,.* 2013 WL 5345969 at *1 (S.D.N.Y. September 23, 2013) (Andrew L. Carter, Jr., J.).

### IV.
### ARGUMENT

#### A.
#### Plaintiff's Claims For Damages (Not Benefits) Under New York Common Law (not ERISA) Against Third Party Strangers to Her Late Husband's ERISA Plan (Not Plan Administrators, Employers, or Fiduciaries) Are Not Preempted by ERISA

In this case, Marta Varela seeks damages (not benefits) from insurance and financial advisors (not from an insurance or benefits plan) who were legal strangers to William's ERISA Plan (that is, not Plan Administrators, Plan fiduciaries, or Plan trustees), based upon allegations of professional errors and omissions (not ERISA violations). Because of this, Plaintiff's state law claims for negligence, negligent misrepresentation, and breach of fiduciary duty are not preempted by ERISA.

ERISA expressly provides for the preemption of "any and all state laws insofar as they may now or here after relate to any employee benefit plan [.]" Section 514(a) of ERISA, 29 U.S.C. §1144(a). Although courts formerly read this language very broadly, the law of ERISA preemption has under gone a sea change over the last several years.

Prior to 1995, there was little question about the scope of ERISA preemption. The Supreme Court had held that ERISA's preemption provisions were "deliberately expansive," *Pilot Life Ins .Co. v. Dedeaux*, 481 U.S. 41, 46 (1987), and that "breadth of [§1144(a)'s] preemptive reach is apparent from that section's language." *Shall v. Delta Airlines Inc.*, 463 U.S.

10

85, 96 (1983). In 1995, however, the Supreme Court noticeably changed tack and "thr[ew] some cold water on the preemption theory" in *New York's State Conference of Blue Cross & Blue Shield Plan v. Travelers Ins. Co.*, 514 U.S. 645 (1995).

In *Travelers*, the court abandoned the practice of analyzing ERISA preemption questions only with reference to the "relate to" language of Section 514 (a), which "marks for preemption 'all state laws insofar as they...relate to any employee benefit plan' covered by ERISA[.]" Travelers, 514 U.S. at 655 (*quoting* section 514(a) of ERISA, 29 U.S.C.A. §1144(a)). The court recognized instead that unless ERISA is read in conjunction with the structure and purpose of the statue as a whole, the "relate to" language of ERISA, which was intended as words limitations, would be "mere sham." *Id.* Concluding that the "relate to" test was unworkable, [2] the court instructed that another test was needed, one that focused on the intent of Congress, rather than just the words "relate to":

> We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the law that Congress understood would survive [preemption].

*Id.* at 656.

The court then recognized that the "objective" of ERISA is to "eliminat[e] the threat of conflicting and inconsistent state and local regulation of employee benefit plans." *Id.* at 657, quoting 120 Cong. Rec. 29933 (1974). "The basic thrust of the pre-emption clause, then, was to

---

[2] Justice Scalia aptly described the folly of applying the "relate to" test:

> "[A]pplying the 'relate to' provision according to its terms was a project doomed to failure, since as many a curbstone philosopher has observed, everything is related to everything else."

*DeBuono v. NYSA-ILA Medical and Clinical Services Fund*, 520 U.S. 806, 813 n.7 (1997) (*quoting California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.* 519 U.S. 316, 35 (1997)) (Scalia, J, concurring)).

11

avoid a multiplicity of regulation in order to permit a nationally uniform administration of employee benefit plans." *Id.*

*Travelers* changed the landscape of ERISA jurisprudence, as the Second Circuit has recognized:

> This circuit has previously held that the analysis of ERISA preemption must start with the presumption that "congress does not intend to supplant state law." *Gerosa [v. Savasta & Co.,* 329 F.3d 317, 323 (2d Cir. 2003)] (*quoting Travelers,* 514 U.S. at 645-55 (internal quote marks omitted). ***We have also noted a reluctance to find ERISA preemption where state laws do not affect the relationships among "the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries."*** *Id.* at 324.

*Stevenson v. The Bank of New York Company, Inc.*, 609 F.3d. 56, 59 (2d Cir. 2010) (emphasis added). *Accord, Cherniak v. Solow Realty and Development Compnay, LLC.*, 2013 WL 3757082, at *2 (S.D.N.Y. July 17, 2013).

In his memorandum Defendant Greco recasts Plaintiff's claims as arising from an alleged failure to receive "notice of any conversion rights." Defendants' Memorandum at 6. He then argues that Plaintiff's claims are "preempted by ERISA." *Id.* This argument must fail because Plaintiff is not suggesting, must less complaining, that anyone failed to give William notice of his right to convert his policy. William received the required notice of his right to convert, and he very much wanted to exercise those rights. That is precisely why he consulted with the Defendants, who gave him advice on how, and when, to do so. Plaintiff does not complain about a lack of notice; instead she complains that the Defendants – third party insurance and financial advisors who are strangers to the SunTrust plan – gave William bad advice regarding the conversion deadline. Defendant's preemption argument is untenable considering the allegations of the Amended Complaint and the prevailing ERISA preemption jurisprudence.

As noted above, the Second Circuit is reluctant to find ERISA preemption where the state law claims do not affect the relationships among "the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries." *Gerosa*, 329 F.3d at 324. Here, while Mrs. Varela is undoubtedly a beneficiary, and her late husband was undoubtedly a participant in the SunTrust ERISA Plan, Greco and BFG are complete strangers to the SunTrust plan. The Plan Documents themselves plainly identify "SunTrust Bank, Inc." as the **"EMPLOYER AND PLAN ADMINISTRATOR."** (*See* Plan documents appended to Barnum's Declaration of Marie O'Dell [Exhibit A to Plaintiff's Second Amended Complaint] at page 000044). Defendant admits (as he must) that he "is not a plan fiduciary for decedent's life insurance policy," and that he "had no control (or authority) over the Decedent's ERISA plan[.]" Defendant's Memorandum at 1 and 7. And, of course, Defendants were not themselves Plan beneficiaries or participants. Thus, they were not among the "core ERISA entities" whose relationships are governed by ERISA.

Since Defendants had no connection to the SunTrust ERISA plan, ERISA preemption does not apply, and the Court should reject their preemption argument. *Stevenson v. The Bank of New York Company, Inc., supra.; Cherniak v. Solow Realty and Development Company, LLC, supra.*

### B.
### Plaintiff Has Stated Claims Under the Common Law of Negligence, Negligent Misrepresentation, and Breach of Fiduciary Duty

In his brief, Greco seek dismissal of each of Plaintiff's three state common law claims, but have combined some of his arguments. For clarity, Plaintiff has parsed them out somewhat, and presents below arguments in support of her claims.

### a.
### Plaintiff's negligence and negligent misrepresentation claims

Defendant argues that Plaintiff's claims for negligence and negligent misrepresentation should be dismissed because there is no "special relationship" between the parties and because "insurance agents… have no continuing duty to advice, guide, or direct a client to obtain additional coverage." Defendants' Memorandum at 7-8.

Greco too narrowly portrays Defendants as just "insurance agents." They are foremost financial advisors, and are also insurance advisors. In any event, Greco misapprehends the nature of Plaintiff's claims. Plaintiff is not suing Defendants because they did not obtain insurance for Plaintiff or her now-deceased husband. Instead, Plaintiff is suing Defendants in negligence for mis-advising William regarding the conversion date.

The Second Circuit has recognized that "under New York law an insurance broker owes no **continuing** duty to advise or direct its client about *future additional insurance needs*[.]" *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 386 (2d Cir. 2006). (boldface added, italics in original). But that is not the situation here at all. Plaintiff is not complaining that Defendants failed to advise William about "future additional insurance needs" and breached a "continuing duty." Plaintiff instead is complaining that Defendants actually *did* provide advice to William, but that the advice was wrong, and failed to give him proper advice. Under these circumstances, New York law recognizes that an insurance and financial advisor, such as Barnum, may be liable under a theory of negligence for providing bad advice or failing to provide required advice.

For instance, as the court in *GlobalNet* recognized, an insurance broker may be liable under a theory of negligence "for failing to inform an insured client about the cancelation of an insurance policy" when the broker knew about the cancellation and the insured did not.

14

*GlobalNet*, 449 F.3d at 387 (discussing *Kamen Soap Prods Co., Inc. v. Brusansky & Brusansky, Inc.* 5 A.D.2d 620,623, 173 N.Y.S. 2d 706, 707-08 (N.Y.App. Div. 1958)). Additionally, New York courts "have created an exception to [the] general rule [in cases] where… an insurance agent may have failed to correct a misimpression or affirmatively misrepresented a scope of … insurance coverage." *Ordonez v. Lovelace Inc.*, 2007 WL 496445, at *5 (E.D.N.Y. February 12, 2007) (*citing Glick Truck Sales Inc., v. Spadaccia-Ryan-Haas, Inc.*, 290 A.D.2d 780, 782 (3d Dep't 2002) and cases cited there. These decisions support subjecting insurance brokers and advisors to tort liability for giving bad advice or failing to give required advice.

Moreover, courts have recognized that financial advisors may be held liable for professional malpractice. *See, e.g., Severstal Wheeling Inc. v. WPN Corporation*, 809 F. Supp. 2d 245, 258-9 (S.D.N.Y. 2011) (*citing Assured Guar. (UK) Ltd. v. J. P. Morgan Inv. Mgmt., Inc.*, 80 A.D. 3d 293, 306, 915 N.Y.S. 2d 7 (1st Dep't 2010) and *Bullmore v. Ernst & Young Cayman Is.*, 45 A. D. 3d 461, 463, 846 N.Y.S. 2d 145 (1st Dep't 2007)). One need only look at Barnum's own website to see that Defendants fit within the definition of advisors who may be held liable in tort for their acts and omissions:

> ***At Barnum Financial Group, an office of MetLife, we offer comprehensive financial services & products*** that empower our clients to improve their long term financial health and reach their lifetime goals and dreams. As a client, you have access to a full line of insurance line and investment products from many well-known financial companies. ***The representatives from Barnum Financial Group work closely with a team of resources, both internally and externally, to ensure clients receive the most extensive comprehensive services available.***

See "OVERVIEW" from Barnum Financial Group website, downloaded December 10, 2013 from *www.barnumfinancialgroup.com/section14.cfm*, attached as exhibit B. (emphasis added).

Permitting recovery when a financial and insurance advisor gives bad advice (or fails to give required advice), which the client follows to his detriment, does not offend the "general

15

principle" that an insurance "broker" does not have an ongoing, "continuing duty to advise or direct its client about *future additional needs*." Instead, permitting liability under these circumstances merely holds financial and insurance advisors to the same standards of care applicable to other advisors whose advice is routinely sought and given. It holds them responsible for the advice they give or fail to give. Defendants, therefore, are subject to liability under the common law of negligence.

Greco also argue that Plaintiff's claims for negligence and negligent misrepresentation should be dismissed because there was no "special relationship" between William and Barnum and because, as a matter of law, William's reliance upon Barnum's bad advice was not reasonable. Defendant's Memorandum at 8, 11-12.

A "special relationship" exists when one party "possess[es]" unique or specialized expertise, or [is] in a special position of confidence and trust with the injured party such that reliance on the negligence misrepresentation is justified," or when there is "some identifiable source of a special duty of care." *Kimmell v. Schaefer*, 89 N.Y. 2d 257, 263-64, 652 N.Y.S. 2d 715, 675 N.E. 2d 450 (1996). Here, the Amended Complaint adequately alleges facts which, accepted as true, establish a special relationship between Defendants and William. William consulted with Defendants precisely *because* of Defendant's superior knowledge regarding insurance matters, and because William needed advice regarding converting his basic policy to a private policy which would increase his coverage from $10,000 to $450,000 (Second Amended Complaint at ¶ ¶ 21-25, 35-38). William wanted this additional insurance for the benefit of his wife, and Defendants knew this. (*Id.* at ¶ 35). Plaintiff also alleges that "[h]ad defendants properly advised William of the correct policy conversion notice date, William would have timely submitted the appropriate form." (*Id.* at ¶ ¶ 34, 47, and 54).

New York Courts have recognized that a special relationship arises where the insured "relies on expertise of the agent regarding a raised question of coverage[.]" *Curanovic v. New York Central Mutual Fire Insurance Company*, 307 A.D.2d 435, 438, 762 N.Y.S. 2d 148, 151-2 (2003) (*citing Murphy v. Kuhn*, 90 N.Y. 2d 266, 272, 660 N.Y.S. 2d 371, 682 N.E.2d 972 (1997)). *See also, Cunningham v. Insurance Company of North America*, 521 F. Supp.2d 166, 173 (E.D.N.Y. 2007)(denying insurance broker's motion for summary judgment on negligence and malpractice claim based upon allegations that broker "mislead" plaintiff into believing that there would be year round coverage.). The Second Amended Complaint sufficiently alleges circumstances under which Defendants, insurance and financial advisors, may be held liable for negligent misrepresentation.

The Second Amended Complaint also alleges sufficient facts establishing reasonable reliance upon Defendants' bad advice. Defendant argues that liability is precluded because William allegedly "received actual notice from his employer… regarding the time limit for converting his group policy." Defendant's Memorandum at 11. Defendant's argument misses the mark in at least two ways. First, it is precisely because William did *not* understand how to convert his policy that he consulted with Defendants in the first place. And that is exactly the kind of advice Defendants seeks to give to people. According to Barnum's website,

> *At Barnum Financial Group, we are committed to providing financial education to our clients and the community. By empowering people with knowledge to make informed financial decisions, we make life a little easier one family at a time. Barnum Financial Group truly believes your life is our business.*

*See,* "OVERVIEW" from Barnum Financial Group website, attached as exhibit B. (emphasis added).

Second, New York law does not permit Defendant's argument that because the plan documents may have contained specified dates, Defendant's bad advice regarding the conversion

17

date is irrelevant and not actionable. In *Cunningham v. Insurance Company of North America*, for instance, the court rejected the insurance broker's argument that "the Plaintiff should be presumed to have read and understood his insurance policy, and consequently be barred from bringing the remaining [negligent and malpractice] claims." *Cunningham*, 521 F. Supp. 2d at 173. The court held that "[w]hen an insurance broker creates a misimpression, whether willful or not, with regard to an insured's policy, it is not entitled to rely upon the presumption defense as a complete defense." *Id.* at 176. The court went on to explain why the law recognized this exception to the general rule that an insured is expected and presumed to read and understand his insurance policy:

> "An insured has a right to look to the expertise of its broker with respect to insurance matters. And, it is no answer for the broker to argue, as an insurer might, that the insured has an obligation to read the policy. It is precisely to perform this service as well as others that the insured pays a commission to the broker."

*Id.* (quoting *Baseball Office of the Commissioner v. Marsh & McLennan, Inc.*, 295 A.D.2d 73, 82, 742 N.Y.S. 2d 40, 48 (2002) (reversing summary judgment in favor of insurance broker because even though the insurance policy contained a notice-of-suit requirement, the broker "failed to advise [its client] properly as to its notice obligations").

Likewise here, Defendants should not be heard to argue that their misrepresentation regarding the conversion date is not actionable because William allegedly had received documents stating what the correct date was. William went to Defendants to determine what he had to do to convert his policy, and *when he had to do it.* Defendants gave him advice and he followed it. That is, after all, what they wanted him to do.

### b.
### Plaintiff's common law breach of fiduciary duty claim

Greco's only argument in opposition to Plaintiff's claim for breach fiduciary duty is to repeat his argument that no "special relationship" existed between William and Defendants. As

explained above, however, the Second Amended Complaint alleges sufficient facts setting forth the existence of a special relationship which arose when William consulted with Defendants regarding a specific insurance procedure – conversation of a life insurance policy – *and when Defendants responded by giving him advice*, albeit incorrect advice. Particularly at the pleading stage, in the absence of any factual record, accepting Defendant's "no special relationship" argument would be inappropriate because "whether a fiduciary duty 'exists is necessarily fact-specific to the particular case[.]'" *See American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corp.*, 351 F. Supp. 2d 79, 102 (S.D.N.Y. 2004) (quoting *Weiner v. Lazard Freres & Co.*, 241 A. D. 2d 114, 72 N.Y.S. 2d 8, 14 (1st Dep't 1998)).

## V.
## CONCLUSION

Plaintiff requests that the Court deny defendant Greco's motion to dismiss.

GREENBLATT PIERCE ENGLE
FUNT & FLORES, LLC

_____ 12 Jan. 2014
Thomas More Marrone
*Attorney for Plaintiff*