UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARTA BARBEOSCH VARELA, Individually and
as Executrix of the Estate of William P. Barbeosch,
deceased,

                                    Plaintiff,        Civil Action No. 13 CV 3332 (ALC)

       - against -

BARNUM FINANCIAL GROUP, Peter Greco, and
George Gerhard III,

                                    Defendant.
---------------------------------------------------------------X

**METROPOLITAN LIFE INSURANCE COMPANY D/B/A BARNUM FINANCIAL GROUP'S
REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

                                                               SEDGWICK LLP
                                                                225 Liberty Street, 28th Floor
                                                                New York, New York 10281-1008
                                                                 T: 212.422.0202 | F: 212.422.0925
                                                                *Attorneys for Defendant Metropolitan Life Insurance Company d/b/a*
                                                                *Barnum Financial Group*

*Michael H. Bernstein*
*Matthew P. Mazzola*
    *Of Counsel*

19872901v1

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

    POINT I

    ALL OF PLAINTIFF'S CAUSES OF ACTION AGAINST BARNUM
    ARE COMPLETELY PREEMPTED BY ERISA ................................................................. 1

    POINT II

    PLAINTIFF'S STATE LAW CAUSES OF ACTION ARE WITHOUT MERIT ................... 5

        A.    Plaintiff's State Law Causes of Action are Implausible on Their Face ................ 5

        B.    Plaintiff's State Law Causes of Action Fail to State a Claim for Which
            Relief May Be Granted ............................................................................................ 6

            1.    Plaintiff's First Cause of Action for Negligence Must Be Dismissed ........ 7

            2.    Plaintiff's Second Cause of Action for Negligent Misrepresentation ......... 9

            3.    Plaintiff's Third Cause of Action for Breach of Fiduciary Duty ............... 10

CONCLUSION ............................................................................................................................. 10

19872901v1

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aetna Life Ins. Co.* v. *Borges*,
  869 F.2d 142 (2d Cir. 1999) ...................................................................................................... 2

*Ashcroft v. Iqbal*,
  556 US 662 (2009) ..................................................................................................................... 5

*Bruckmann, Rosser, Sherrill & Co., L.P. v. Marsh USA, Inc.*,
  65 A.D.3d 865 (1st Dept. 2009) .............................................................................................. 10

*Cunningham v. Insurance Co. of North America*,
  521 F.Supp.2d 166 (E.D.N.Y. 2006) ..................................................................................... 5, 6

*Gerosa v. Savasta & Co., Inc.*,
  329 F.3d 317 (2d Cir. 2003) .................................................................................................. 3, 4

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*,
  449 F.3d 377 (2d Cir. 2006) ...................................................................................................... 8

*JAO Acquisition Corp. v. Stavitsky*,
  8 N.Y.3d 144 (2007) .................................................................................................................. 9

*Kvest LLC v. Cohen*,
  86 A.D.3d 481 (1st Dept. 2011) .............................................................................................. 10

*Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.*,
  21 F.Supp.2d 284 (S.D.N.Y. 1998) ........................................................................................... 5

*Massachusetts Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ................................................................................................................... 2

*Murphy v. Kuhn*,
  90 N.Y.2d 266 (1997) ...................................................................................................... 7, 8, 9

*Pilot Life Ins. Co. v. Dedeaux*,
  481 U.S. 41 (1987) ............................................................................................................ 2, 3, 5

*Pulka v. Edelman*,
  40 N.Y.2d 781 (1976) ................................................................................................................ 7

*Sawyer v Rutecki*,
  937 NYS 2d 811 (4th Dept 2012) .............................................................................................. 8

*Scharff v. Raytheon Co. Short Term Disability Plan*,
  581 F.3d 899 (9th Cir. 2009) ..................................................................................................... 5

*Schultz v. Tribune ND, Inc. f/k/a Newsday, Inc.*,
  754 F.Supp.2d 556 (E.D.N.Y. 2010) .................................................................................. 3

*Shah v. Helen Hayes Hosp.*,
  252 Fed.Appx. 364 (2d Cir. 2007) ................................................................. 6, 7, 8, 9, 10

*Siti–Sites.com, Inc. v. Verizon Commc'ns, Inc.*,
  2010 WL 5392927 (S.D.N.Y. Dec. 29, 2010)
  *aff'd*, 428 Fed.Appx. 100 (2d Cir. 2011) ............................................................. 7, 8, 9, 10

*Skrable* v. *Aetna Life Ins. Co.*, No. 10 Civ. 1395(AKH),
  2010 WL 4053981 (S.D.N.Y. Sept. 22, 2010) ................................................................ 4, 5

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d Cir. 1998) ............................................................................................. 6

## Statutes

29 U.S.C. §§ 1132(a)(1)(B) ....................................................................................................... 2

29 U.S.C. §1144(a) ........................................................................................................... 2, 4, 5

Employee Retirement Income Security Act of 1974,
  29 U.S.C. §1001, *et seq.* ("ERISA") ................................................................................ 1

ERISA § 502(a); 29 U.S.C. § 1132(a) ................................................................................ 4, 5

ERISA §§ 502(a)(1)(B) .............................................................................................................. 2

ERISA §514(a) ................................................................................................................. 2, 4, 5

## Rules

FED. R. CIV. P. Rule 12(b)(6) ................................................................................................... 1

## PRELIMINARY STATEMENT

Defendant, Metropolitan Life Insurance Company ("MetLife") d/b/a Barnum Financial Group ("Barnum") (collectively referred to herein as "MetLife d/b/a Barnum"), respectfully submits this Reply Memorandum of Law in further support of its motion for an order pursuant to FED. R. CIV. P. Rule 12(b)(6), dismissing with prejudice the Second Amended Complaint ("SAC") of plaintiff Marta Barbeosch Varela ("Varela"), Individually and as Executrix of the Estate of William P. Barbeosch ("Decedent"), as against defendant MetLife d/b/a Barnum on the grounds that each one of the causes of action asserted is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA"), and because each cause of action fails to state a claim for which relief can be granted. In her Opposition to MetLife d/b/a Barnum's Motion to Dismiss ("Opposition"), Varela conclusorily argues that her state law claims against Barnum are proper and not preempted by ERISA. But plaintiff's arguments ignore controlling legal authority demonstrating the insufficiency of her pleadings and ignore that Barnum is merely an office of MetLife. Varela's Opposition improperly recites her own conclusory statements on this issue and adds arguments concerning allegations of fact that do not appear in the SAC. It is well-settled, however, that Varela cannot plead around ERISA preemption by using artful language. A review of plaintiff's SAC reflects that she seeks nothing more than the life insurance benefits that would have been payable under the Plan had the Decedent timely converted the life insurance coverage he had under the SunTrust Employee Benefit Plan (the "Plan") to an individual policy. As such, her SAC is completely preempted by ERISA. Similarly, Varela's Opposition fails to demonstrate the sufficiency of her state law claims, even if they are not all preempted by ERISA.

Given the foregoing, and as more fully discussed below, it is respectfully requested that this Court issue an Order pursuant to FED. R. CIV. P. Rule 12(b)(6), dismissing the plaintiff's SAC in its entirety and with prejudice as against MetLife d/b/a Barnum.

## ARGUMENT
### POINT I
### ALL OF PLAINTIFF'S CAUSES OF ACTION AGAINST METLIFE D/B/A BARNUM ARE COMPLETELY PREEMPTED BY ERISA

ERISA's federal preemption provision explicitly states, in pertinent part that : ". . . the provisions of

this subchapter . . .shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . ." 29 U.S.C. §1144(a); ERISA §514(a). As the Second Circuit has observed, "[w]hat triggers ERISA preemption is not just an indirect effect on the administrative procedures, but rather an effect on the primary administrative functions of benefit plans, *such as determining an employee's eligibility for a benefit and the amount of that benefit.*" *Aetna Life Ins. Co.* v. *Borges*, 869 F.2d 142, 146-47 (2d Cir. 1999) (emphasis added).

As discussed at length in the principal motion papers, plaintiff's SAC alleges several causes of action under New York state law that are completely preempted by ERISA.[1] These causes of actions allege that but for the Decedent's reliance on MetLife d/b/a Barnum's purported misrepresentations regarding his group life insurance conversion rights under the Plan, Decedent would have timely submitted his conversion application. It is undisputed, however, that all of Varela's causes of action against MetLife d/b/a Barnum "relate to" Decedent's conversion rights under the Plan, and thus, are preempted by ERISA under both the complete and conflict preemption doctrines. *See* 29 U.S.C. §§ 1132(a)(1)(B); 1144(a); ERISA §§ 502(a)(1)(B); 514(a). The basis for complete ERISA preemption is evident from the fact that Varela's SAC seeks to recover "damages" in the amount of $440,000, which is identical to the amount of life insurance benefits she would have been entitled to under the terms of the Plan if the Decedent had died during the application period, which he did not. But what plaintiff really seeks is the benefits themselves and she is not entitled to pursue causes of action outside of ERISA's exclusive remedial scheme in order to enforce her right to Plan benefits. Therefore, Varela's state law claims constitute impermissible alternate enforcement mechanisms prohibited under ERISA., and must be dismissed. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)).

The relief Varela seeks falls comfortably within the scope of ERISA § 502(a)(1)(B). As such, her resort to state law causes of action against improper party defendants in an effort to avoid ERISA's preemptive sweep is improper. *See Schultz v. Tribune ND, Inc. f/k/a Newsday, Inc.*, 754 F.Supp.2d 556 (E.D.N.Y.

---

[1] *See* Point I of Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("MetLife's MOL") at pp. 10-14.

2

2010). Varela's state law causes of action, which seek the exact amount of benefits allegedly due under the Plan, show that she is simply trying to avoid ERISA preemption by the use of "artful pleading." (SAC ¶ 31, 55-56).[2] However, under the "artful-pleading doctrine," which is a corollary to the well-pleaded complaint rule, "courts look beyond the face of an artfully pled complaint to determine whether plaintiff has clothed a federal claim in state garb by pleading state law claims that actually arise under federal law." *Schultz*, 754 F.Supp.2d at 556 (internal quotations and citations omitted).

Varela's arguments in opposition are nothing more than a semantic word game in which she argues that she seeks "damages" and not "benefits." (*See* Varela's Opposition ("Pl. Opp.") at p. 10). Despite this kind of "artful pleading," it is clear that Varela seeks Plan benefits via impermissible alternate enforcement mechanisms, which is not permitted under ERISA.  *See Pilot Life Ins. Co.*, *supra.*

Varela also argues in her Opposition that her claims are not preempted by ERISA because she did not bring this action against any plan fiduciary, and further argues claims that MetLife d/b/a Barnum admitted this was correct. (Pl. Opp. pp. 12-13). Varela cites *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 324 (2d Cir. 2003), to support her argument that her claims are not preempted by ERISA because they do not affect the relationships among "core ERISA entities;" i.e. "beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself." *Id.* at 324. However, the Second Circuit's *dicta* in *Gerosa* simply discussed trends among several federal courts showing a "reluctance" to find that claims not affecting the relationship between "core ERISA entities" are preempted by ERISA. *Id.* at 24. This *dicta* does not constitute a holding that carves an exception from the "artful pleading" rule as Varela suggests. Nonetheless, Varela relies on this *dicta* as the basis for her argument in support of her state law causes of action against what she alleges, is a non-ERISA entity (i.e. Barnum) for allegedly failing to accurately interpret the Plan's

---

[2] All references to numbers "00001" through "000048", "000049" through "000065", "000340" to "000341" and "000266" to "000267" are to the Bates Stamped pages annexed as Exhibits "A" through "D" to the Declaration of Marie O'Dell ("O'Dell Dec.") dated October 25, 2013 submitted in support of MetLife d/b/a Barnum's Motion to Dismiss Plaintiff's Amended Complaint. (SAC ¶¶ 10-15 and 20-22; Doc. Nos. 23-1, 23-2, 23-3 and 23-4). Since Varela attached the O'Dell Dec., including all exhibits, as Exhibit "A" to her SAC, this Court may consider the O'Dell Dec., and the exhibit annexed thereto, in deciding MetLife d/b/a Barnum's motion to dismiss. (*See* Ex. A of SAC).

3

conversion requirements, which activity is a core ERISA fiduciary function. (Pl. Opp. pp. 12-13). Varela further fails to acknowledge that in *Gerosa,* the Second Circuit held that "state laws that would tend to control or supersede central ERISA functions — such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits — have typically been found to be preempted." *Gerosa*, 329 F.3d at 324.

Varela's Opposition also fails to address MetLife's argument that Barnum is not a legal entity at all, but rather is a unit of MetLife.[3] Here, Barnum was the unit through which MetLife acted to convert Plan participants' group coverage to individual coverage. During its administration of the Plan,[4] MetLife, through Barnum, administered such conversions, and in that capacity provided the Decedent with information regarding several individual life insurance policies he could choose pursuant to the Plan's "option to convert" provision. (46). This is how MetLife administered the "option to convert" provision of the Plan and any causes of action based on alleged misrepresentations made to the Decedent by Barnum in this capacity "relates to" the Plan's conversion provisions, and are thus preempted by ERISA. *See* ERISA § 502(a); 29 U.S.C. § 1132(a); ERISA §514(a); 29 U.S.C. §1144(a); *Pilot Life, supra.*; *Skrable* v. *Aetna Life Ins. Co.*, No. 10 Civ. 1395(AKH), 2010 WL 4053981, *2 (S.D.N.Y. Sept. 22, 2010). As such, plaintiff's New York State law causes of action against Barnum should be dismissed in their entirety.

It is also undisputed that the Decedent received sufficient written notice of the Plan's conversion rules from the appropriate "core ERISA entities" on multiple occasions, prior to the date Decedent's time to convert had expired. Both the Plan and SPD set forth the Plan's conversion rules and the Decedent's employer/Plan Administrator also sent the Decedent two written notifications explaining the Plan's conversion rules.[5] (35, 56, 266-67, 340-341) (SAC ¶ 20). Despite all of this actual notice that was undeniably received by Decedent, he did not timely submit any application to convert his coverage and thus, Varela's claim for life insurance benefits in excess of $10,000 was properly denied by MetLife. Varela's state law claims,

---

[3] *See* Barnum Website at <http://www.barnumfinancialgroup.com/> as it appeared on February 3, 2015.
[4] MetLife is the Plan's claim administrator, not the Plan Administrator. In this capacity, MetLife is a Plan fiduciary.
[5] *See* Statement of Facts section of MetLife's MOL at pp. 4-8.

4

if allowed would infringe upon MetLife's duty to administer claims in accordance with the clear and unambiguous terms of the Plan. Consequently, they are preempted by ERISA. *See* ERISA § 502(a); 29 U.S.C. § 1132(a); ERISA §514(a); 29 U.S.C. §1144(a); *Pilot Life Ins. Co.*, *supra.*; *Skrable*, *supra.*

## POINT II
## PLAINTIFF'S STATE LAW CAUSES OF ACTION ARE WITHOUT MERIT

### A. Plaintiff's State Law Causes of Action are Implausible on Their Face[6]

In addition to being preempted by ERISA, Varela's state law causes of action should be dismissed because they all fail to "state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 US 662, 678-680 (2009). Each of Varela's causes of action allege that MetLife d/b/a Barnum provided the Decedent with incorrect information regarding his conversion rights under the Plan, and that "[if MetLife d/b/a Barnum had] properly advised [the Decedent] of the correct policy conversion notice date, [the Decedent] would have submitted the appropriate form in a timely manner." (SAC ¶¶ 39, 47, 54). These speculative allegations are completely contradicted by indisputable documentary evidence and other allegations in the SAC.

Both the SPD and the Plan state that a Plan participant must submit the appropriate conversion form within 31 days of his/her employment status change. (35, 56). Therefore, as a matter of law, the Decedent received, at the very least, constructive notice of these Plan terms prior to the date on which his conversion period expired. *See Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.*, 21 F.Supp.2d 284, 299 (S.D.N.Y. 1998); *see also Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 908 (9th Cir. 2009). Therefore, it makes no difference that Decedent purportedly received incorrect information about the conversion period from Barnum because he undeniably received the written Plan and SPD, which clearly and unambiguously provided him with all the necessary information on this issue.

Varela cites *Cunningham v. Insurance Co. of North America*, 521 F.Supp.2d 166, 176 (E.D.N.Y. 2006), to support her argument that MetLife d/b/a Barnum is not entitled to rely on the presumption that the Decedent had constructive knowledge of unambiguous terms of the Plan where it allegedly created a "misimpression, whether willful or not, with regard to an insured's policy." (Pl. Opp. pp. 17-18). Varela's

---

[6] *See* Point II(A) of MetLife's MOL at pp. 14-16.

reliance on *Cunningham* is misplaced because that case involved an insurance broker who made several misrepresentations about the particular insurance coverage he procured for the plaintiff, which the plaintiff reasonably relied upon. *Id.* By contrast, Varela alleges that Barnum should be held liable for misrepresentations it allegedly made to the Decedent regarding his conversion rights, although Barnum did not procure any policy for her or the Decedent. Furthermore, unlike in *Cunningham*, where the broker was the plaintiff's sole source of information, the Decedent was a participant in the Plan and admittedly received the SPD, as well as all of the documentation explaining his conversion rights directly from Plan fiduciaries.

Varela's speculative and self-serving contention that the Decedent would have timely converted his group coverage if only Barnum properly advised him about his conversion period is simply not plausible in light of the SunTrust HR Department email to him dated April 8, 2011, which explained his conversion rights under the Plan. (340-341) (SAC ¶ 20). A follow-up communication dated April 18, 2013, which SunTrust mailed to the Decedent, included a MetLife "Conversion of Group Life benefits to an Individual Policy" form in response to Decedent's request. This form also explained the time frame for Decedent to convert his coverage under the Plan. (266-67). Varela's opposition fails to even address this indisputable proof demonstrating Decedent's actual knowledge of his conversion period, much less raise a triable issue concerning how he could have relied on incorrect information from Barnum that was inconsistent with the information he indisputably received from MetLife and his employer.

**B.   Plaintiff's State Law Causes of Action Fail to State a Claim for Which Relief May Be Granted**

Varela argues that each of her state law causes of action against MetLife d/b/a Barnum state claims for which relief may be granted. (Pl. Opp. pp. 13-18). These arguments ignore well-settled law in the State of New York and, furthermore, are based on conclusory factual allegations that do not appear in the SAC. These allegations are insufficient as a matter of law to defeat a motion to dismiss. *See Shah v. Helen Hayes Hosp.,* 252 Fed.Appx. 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint.") (citing *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998)); *Siti Sites.com, Inc. v. Verizon Commc'ns, Inc.,* 2010 WL 5392927, at *5 (S.D.N.Y. Dec. 29, 2010) *aff'd,* 428 Fed.Appx.

6

100 (2d Cir. 2011).

    **1.    Plaintiff's First Cause of Action for Negligence Must Be Dismissed[7]**

Before a defendant may be held liable for negligence it must be shown that the defendant owes a legal duty to the plaintiff. *See Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976). The law is well-settled that insurance agents/brokers have only a common-law duty to obtain requested coverage for their clients within a reasonable time or to inform the client of their inability to do so. *See Murphy v. Kuhn*, 90 N.Y.2d 266, *270 (1997). Varela argues that MetLife d/b/a Barnum "too narrowly portrays itself as just 'insurance agents/brokers' in this case" because it was foremost a financial and insurance advisor.[8] (Pl. Opp. p. 13). This is a distinction without a difference for purposes of Varela's cause of action. While Varela labels MetLife d/b/a Barnum a "financial advisor" and references its internet website to support her argument that MetLife d/b/a Barnum should be held to the standard of a financial advisor because it generally provides financial services, the allegations in her SAC do not support this contention, nor do they allege that Decedent was seeking "financial advice." Rather, the SAC alleges that Decedent's only purpose in communicating with Barnum was to investigate his conversion options to replace the group life insurance coverage he had lost.[9] (*Id.*). Specifically, Varela alleges that Decedent spoke with Barnum regarding purchasing an individual policy to replace the lost group coverage above the $10,000.00 basic life insurance. (SAC ¶ 24). Thus, plaintiff tacitly admits in the SAC that the Decedent utilized MetLife d/b/a Barnum's services as an insurance agent/broker in considering whether to convert his coverage under the Plan to an individual policy, not as a financial advisor. (*Id.*). Varela's opposition argument that MetLife d/b/a Barnum acted as a financial advisor is insufficient as a matter of law to defeat the motion to dismiss. *See Shah, supra.*; *Siti–Sites.com, Inc., supra.*

Although Varela conclusorily argues that an insurance agent/broker may be found negligent for

---

[7] *See* Point II(B)(1) of MetLife's MOL at pp. 16-19.
[8] Varela also argues that Barnum acted as an "insurance advisor" in this case. (Pl. Opp. pp. 5, 13-15). This "profession" appears to be a creation of Varela's counsel, who fails to cite any case law demonstrating a distinction between an insurance agent/broker and an "insurance advisor." (*Id.*).
[9] MetLife first informed the Court and Varela of this deficiency in its Reply in Further Support of MetLife's Motion to Dismiss her Amended Complaint, but Varela still failed to include any allegations in her SAC that the Decedent was seeking financial advice or that Barnum was a financial advisor. (*See* Doc. No. 35 at p. 11).

providing bad advice, it is well-settled that it is only in "exceptional and particularized situations," when there is a "special relationship" between an insurance broker and its customer, that a special level of advisory responsibility might exist.[10] *See Murphy*, 90 N.Y.2d at 270-72. Under New York law, a "special relationship may arise where (1) the agent receives compensation for consultation apart from payment of the premiums, (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent, or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on." *Murphy*, 90 N.Y.2d at 272; *Sawyer v Rutecki,* 937 NYS 2d 811, *813 (4th Dept 2012). Here, Varela does not allege that the Decedent compensated Barnum for the advice it allegedly provided or that there was a course of dealing over an extended period of time that would have put Barnum on notice that its advice was being sought and being specially relied upon by Decedent. Furthermore, although Varela argues in her Opposition that the Decedent consulted with Barnum "precisely because of Barnum's superior knowledge regarding insurance matters" (Pl. Opp. p. 16), no such allegation appears in plaintiff's SAC. Again, Varela may not use her Opposition to the motion to dismiss as a means to amend her complaint.[11] *See Shah, supra.*; *Siti–Sites.com, Inc., supra.*. It must also be noted that Varela does not allege in her SAC that MetLife d/b/a Barnum and the Decedent ever discussed the duration of his group coverage under the Plan or even when the Decedent's coverage under the Plan expired.[12] Therefore, Varela has not alleged sufficient facts to support her conclusory claim that a "special relationship" existed between the Decedent and Barnum.. *See Iqbal*, 129 S. Ct. at 1949-50

Lastly, Varela relies on *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 388 (2d Cir. 2006) for the proposition that an "insurance broker may be liable under a theory of negligence for failing

---

[10] *See* Point II(B)(1) of MetLife's MOL for a discussion of the law and facts relevant to its position that plaintiff did not properly allege the existence of a "special relationship" with Barnum. (*See* MetLife's MOL pp. 17-19).

[11] MetLife informed Varela of this deficiency in its Reply in Further Support of MetLife's Motion to Dismiss her Amended Complaint, but Varela still failed to include any allegations in her SAC that the Decedent consulted with MetLife d/b/a Barnum because of its "superior knowledge" regarding insurance. (*See* Doc. No. 35 at p. 12).

[12] Pursuant to the terms of the Plan, even though the conversion period could be extended for late notice, group coverage under the Plan could not be extended beyond 31 days after the life insurance ended. (34).

8

to inform an insured client about the cancelation of an insurance policy when the insurer knew about the cancellation *and the insured did not*." (Pl. Opp. p 14)(emphasis added). Varela's reliance on *GlobalNet* is misplaced because the documentary evidence attached to, and the allegations in, the SAC show that the Decedent knew or should have known that his group coverage under the Plan was going to change on the date his employment status changed.. (35, 56, 266-67, 340-341) (SAC ¶ 20 and Ex. A). Therefore, Varela cannot argue (and does not allege in the SAC) that the Decedent was unaware of this change in coverage or of the Plans' conversion requirements.

### 2. Plaintiff's Second Cause of Action for Negligent Misrepresentation

In order to prevail on a claim for negligent misrepresentation under New York state law, a plaintiff must establish the following: (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."[13] *See JAO Acquisition Corp. v. Stavitsky,* 8 N.Y.3d 144, 148 (2007). A cause of action for negligent misrepresentation may exist in exceptional circumstances where there is a special relationship between the customer and the insurance broker and the customer reasonably relied on the broker's representations. *See Murphy, supra.* As discussed in Point II (B)(1), *supra*, Varela's SAC does not allege facts demonstrating the existence of such a special relationship between the Decedent and Barnum.

Varela argues in her Opposition that her SAC does allege sufficient facts to establish that Decedent reasonably relied upon Barnum's allegedly incorrect advice. (Pl. Opp. pp. 17). Specifically, Varela speculatively argues that "it is precisely because William did not understand how to convert his policy that he consulted with Barnum in the first place." (*Id.*). Once again, however, the SAC does not allege that the Decedent did not understand how to convert his policy and Varela cannot amend her SAC with these opposition arguments.[14] *See Shah, supra.*; *Siti–Sites.com, Inc., supra.*

Varela also argues that the Decedent reasonably relied on Barnum's purported misrepresentations

---

[13] *See* Point II(B)(2) of MetLife's MOL at pp. 19-20.
[14] MetLife informed the Court and Varela of this deficiency in her Amended Complaint in its Reply in Further Support of MetLife's Motion to Dismiss, but Varela still failed to include any allegations in her SAC claiming that the Decedent "did not understand how to convert his policy." (*See* Doc. No. 35 at p. 13).

9

19872901v1

because this is exactly the type of advice MetLife d/b/a Barnum provides. (Pl. Opp. pp. 16-18). This argument is meritless for several reasons. First, Varela improperly advances this allegation for the first time in opposition to MetLife d/b/a Barnum's motion to dismiss, which is improper as a matter of law.[15] *See Shah, supra.*; *Siti–Sites.com, Inc., supra.*. Second, the documentary evidence Varela references cannot support her new and improper allegation that the Decedent reasonably relied on Barnum's alleged misrepresentations. Indeed, the documentary evidence attached to Varela's SAC demonstrates that the Decedent was informed in writing of his conversion rights. Varela's SAC alleges that despite this notice, Decedent chose to rely on the alleged misrepresentations of an insurance agent/broker with whom he had no prior relationship, who was not a Plan fiduciary, and who Varela has identified as being a "complete stranger to the [Plan]." (Pl. Opp. pp. 9, 10, 12). These implausible allegations are insufficient to support this cause of action as a matter of law.

### 3. Plaintiff's Third Cause of Action for Breach of Fiduciary Duty

Absent a special relationship between an insured and his insurance broker, a claim for breach of fiduciary duty does not lie. *See Bruckmann, Rosser, Sherrill & Co., L.P. v. Marsh USA, Inc.*, 65 A.D.3d 865, 867 (1st Dept. 2009). As discussed in Point II (B)(1), *supra*, Varela's SAC fails to allege sufficient facts to demonstrate that a special relationship existed between the Decedent and MetLife d/b/a Barnum.[16] Furthermore, Varela's Opposition does not respond to MetLife's argument that a fiduciary duty does not exist where the facts alleged establish only that the parties had a typical insurance broker-customer relationship, as Barnum had with the Decedent in this case. *See Kvest LLC v. Cohen,* 86 A.D.3d 481, 483 (1st Dept. 2011). Therefore, the Court should dismiss the plaintiffs' state law breach of fiduciary duty cause of action against MetLife d/b/a Barnum.

### CONCLUSION

For the foregoing reasons, this Court should grant MetLife d/b/a Barnum's motion to dismiss the Plaintiff's SAC in its entirety because it fails to state a claim upon which relief can be granted.

---

[15] MetLife informed Varela of this deficiency in its Reply in Further Support of MetLife's Motion to Dismiss Varela's Amended Complaint, but Varela still failed to include any allegations in her SAC that Barnum seeks provide advice regarding conversion deadlines in policies that it did not procure. (*See* Doc. No. 35 at p. 14).

[16] *See* Point II(B)(3) of MetLife's MOL at p. 20.

Dated: New York, New York
February 6, 2015

Respectfully Submitted,

s/_____
Michael H. Bernstein
Matthew P. Mazzola
SEDGWICK LLP
225 Liberty Street, 28th Floor
New York, NY 10281-1008
Tel. (212) 422-0202
Fax (212) 422-0925
*Attorneys for Defendant Metropolitan Life Insurance Company d/b/a Barnum Financial Group*

11

19872901v1

## CERTIFICATE OF SERVICE

I, Matthew P. Mazzola, hereby certify and affirm that a true and correct copy of the attached **REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION to Dismiss Plaintiff's Second Amended Complaint** was served via ECF and Regular Mail on this 6th day of February, 2015, upon the following:

Thomas More Marrone, Esq.
GREENBLATT PIERCE ENGLE FUNT & FLORES, LLC
123 South Broad Street, 25th Floor
Philadelphia, Pennsylvania 19109
t. 215.735.1600
f. 215.735.1660
*Attorneys for Plaintiff*

Christopher Pisacane, Esq.
SICHENZIA ROSS FRIEDMAN FERENCE LLP
61 Broadway, 32nd Floor
New York, New York 10006
t. 212-930-9700
direct 646-810-0596
f. 212-930-9725
*Attorneys for Co-Defendants
Peter Greco and George Gerhard III*

s/_____
Matthew P. Mazzola (MM-7427)

Dated:   New York, New York
         February 6, 2015

1